## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **KIMBERLY D. POLLARD and** | § | |
| **J.S. (MINOR CHILD),** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case No. 2:16-cv-000238-J** |
| **v.** | § | |
| | § | |
| **CHURCH OF GOD IN CHRIST, INC.;** | § | |
| **CHURCH OF GOD IN CHRIST,** | § | |
| **BOARD OF BISHOPS; and BISHOP** | § | |
| **JAMES L'KEITH JONES** | § | |
| | § | |
| **Defendants.** | § | |

---

### DEFENDANTS'
### MOTION TO SET ASIDE THE ENTRY OF DEFAULT
### AND BRIEF IN SUPPORT

---

Defendants, Church of God in Christ, Inc. (the Church) and Church of God in Christ, Board of Bishops (the Board), file Defendants' Motion to Set Aside the Entry of Default and Brief in Support as follows:

**DEFENDANTS'**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**
**AND BRIEF IN SUPPORT - Page 1**

# I.

## Statement of Facts

On October 31, 2016, the Plaintiffs – Kimberly Pollard and J.S., a minor – sued

three defendants: the Church, the Board, and Bishop James L'Keith Jones.[1]

Essentially, Ms. Pollard alleges that Bishop Jones engaged in an inappropriate

sexual relationship with her beginning in 1995 – twenty-one years ago.[2] Although

the Complaint does not allege any sexual contact between Bishop Jones and J.S., it

states that Bishop Jones was "attempting to groom her minor child J.S."[3]  Plaintiffs

asserted causes of action against the Church and the Board for negligence and

intentional infliction of emotional distress – both theories based on the premise

that the Church and the Board employed Bishop Keith.[4]

The Church is the largest Pentecostal denomination in the United States.[5] It

has over 6.5 million members and had congregations in nearly 80 countries around

the world.[6] It is an active, Tennessee non-profit corporation headquartered in

Memphis, Tennessee.[7] Although Bishop Joel Lyles is the Church's General Secretary,

---

[1] *See* Plaintiffs' Original Complaint, ECF 1.
[2] *See id.* at p. 2, para. 12.
[3] *Id.* at p. 3, para. 13.
[4] *Id.* at p. 3 – 5.
[5] *See* Affidavit of Uleses C. Henderson, p. 00002, para. 3, attached as Exhibit A.
[6] *See id.*
[7] *See id.*

**DEFENDANTS'**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**
**AND BRIEF IN SUPPORT - Page 2**

Linda Wilkins has been its registered agent since 2008.[8] Virtually all suits against the Church have been served on Ms. Wilkins at the Church's Memphis offices.[9]

While Plaintiffs have sued the Board, it is not a separate entity.[10] Rather, the Board is a purely ecclesiastical body within the Church.[11] The Board's members are not statutory corporate officers; they are not a corporate board of directors.[12]

On November 12, 2016, Plaintiffs apparently hand-served the lawsuit on Bishop Lyles at the Church's annual Holy Convocation in St. Louis, Missouri.[13] Holy Convocation is the Church's largest and most important meeting.[14] In 2016, Holy Convocation involved more than 40,000 attendees – many of whom were attending to vote the Church's national officers, which occurs every four years.[15] Most – if not all – of the Church's staff was working in St. Louis. [16]

Uleses Henderson has been the Church's General Counsel since January 2012.[17] Dating back before his tenure, the Church has followed a policy to make sure that lawsuits were timely answered after service.[18] Once a lawsuit is served,

---

[8] *See id.* at p. 00003, para. 6.
[9] *See id.*
[10] *See id.* at p. 00002, para. 4.
[11] *See id.*
[12] *See id.*
[13] *See id.* at p. 00004, para 8.
[14] *See id.*
[15] *See id.*
[16] *See id.* at p. 00004, para. 9.
[17] *See id.* at p. 00003, para. 5.
[18] *See id.* at p. 00003, para. 6.

Ms. Wilkins emails the lawsuit to Mr. Henderson with the header – "LEGAL DOCUMENTS."[19] This process informs Mr. Henderson that service has been perfected and deadlines – including answer dates – are running.[20]

In this instance, Mr. Henderson did not know that service had been perfected.[21] He did not receive a "LEGAL DOCUMENTS" email.[22] Rather, he was handed an envelope at a church service during Holy Convocation.[23] He was unaware that a process server had handed the lawsuit to the Church's General Secretary.[24] Further, the Pacer website would not have shown a proof of service until December 5, 2016 – the day Defendants' answer was due.

## II.

## Argument & Authorities

Courts universally disfavor defaults in favor of addressing cases on their merits.  "[M]odern federal procedure favors trials on the merits."[25]

> The Federal Rules of Civil Procedure are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver.  Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations.[26]

---

[19] *See id.*
[20] *See id.*
[21] *See id.* at p. 00005, para. 13.
[22] *See id.*
[23] *See id.*
[24] *See id.*
[25] *United States v. One Parcel of Real Property,* 763 F.2d 181, 183 (5th Cir. 1985).
[26] *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998).

The Federal Rules and precedent reflect a strong disfavor towards defaults and treat it as a "drastic remedy" appropriate in "extreme situations."  Generally, they "should not be granted on the claim, without more, that the defendant has failed to meet a procedural requirement."[27]

Federal Rule of Civil Procedure 55(c) provides courts a means and standard to set aside an entry of default:  "The Court may set aside an entry of default for good cause."[28]  And, relevant precedent provides that **"**doubts as to whether or not a defendant has shown good cause should be resolved in favor of setting aside the default."[29]  This is particularly true for a motion to set aside an entry of default, which "is more readily granted than a motion to set aside a default judgment."[30]

Good cause involves three primary considerations.  These considerations are: "(1) whether the failure to respond was due to excusable neglect; (2) whether the plaintiff would suffer prejudice if the default was set aside; and (3) whether the defendant has presented a meritorious defense."[31]  In this case, these three considerations favor setting aside the entry of default.

---

[27] *Lacy v. Sitel Corp.,* 227 F.3d 290, 292 (5th Cir. 2000)(quoting *Mason & Hanger-Silas Mason Co. v. Metal Trades Council,* 726 F.2d 166, 168 (5th Cir. 1984)).

[28] Fed. R. Civ. P. 55(c).

[29] *SnoWizard, Inc. v. Robinson*, 2012 U.S. Dist. LEXIS 68479, *4 (E.D. La. 2012)(citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

[30] *In re OCA,* 551 F.3d 359, 370 (5th Cir. 2008).

[31] *Flores v. Koster,* 2012 U.S. Dist. LEXIS 184458, *6 (N.D. Tex. 2012)(citing *Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.,* 346 F.2d 552, 563 (5th Cir. 2003)).

## A.  Defendant's failure to respond was due to "excusable neglect."

The Fifth Circuit follows the "excusable neglect" standard.[32]  "Excusable

neglect is an 'elastic concept' and is not limited strictly to omissions caused by

circumstances beyond the control of the movant."[33]  Indeed, it includes "simple,

faultless omissions to act and, more commonly, omissions caused by

carelessness."[34]

In this case, the unique circumstances of service and a miscommunication

resulted in Defendants' failure to timely answer Plaintiff's lawsuit. For years, the

Church's General Secretary's office and General Counsel have followed a procedure

that flags formally served lawsuits so that the Church timely answers them.[35] Under

this procedure, when a lawsuit is served on the Church, the General Secretary's

office emails the documents with the header "LEGAL DOCUMENTS" to the Church's

General Counsel, which alerts him that service has been perfected.[36] Using this

simple system the Church has not defaulted on an answer during Mr. Henderson's

tenure.[37]

---

[32] *See id.*
[33] *Id.* (citing and quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392 (1993)).
[34] *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 392 (1993)).
[35] *See* Henderson Affidavit, p. 00003, para. 6.
[36] *See id.*
[37] *See id.* at p. 00003, para. 5.

Unfortunately, this lawsuit was served in an unusual circumstance. First, although virtually all lawsuits are served at the Church's Memphis office, Plaintiff's process server personally handed the lawsuit to Bishop Lyles. Second, the lawsuit was served on Bishop Lyles at the Church's Holy Convocation. Owing to these circumstances, Mr. Henderson did not know that service had been perfected.[38] He did not receive a "LEGAL DOCUMENTS" email.[39] Rather, he was handed an envelope at a church service during Holy Convocation.[40] He was unaware that a process server had handed the lawsuit to the Church's General Secretary.[41] Courts have set aside defaults when a registered agent indisputably receives the lawsuit, but the party responsible for answering it does not realize formal service was perfected.[42]

**B. Plaintiffs would not suffer prejudice if the Court sets aside the entry of default.**

Mere delay does not constitute "prejudice;" similarly, having to prove your case's merits does not constitute "prejudice."

> There is no prejudice to the plaintiff where "the setting aside of the default has done no harm to plaintiff except to require it to prove its case. It has decided nothing against it except that it cannot continue to hold the sweeping [relief] it obtained ... without a trial and by default.

---

[38] *See id.* at p. 00005, para. 13.
[39] *See id.*
[40] *See id.*
[41] *See id.*
[42] *See McGarrah v. Kmart Corp.*, 1998 U.S. Dist. LEXIS 17118, *4-6 (N.D. Tex. 1998).

All that ... has [been] done is to give the defendants their day in court."[43]

Instead, "the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion."[44]  Merely causing plaintiff to prove its case is not prejudice sufficient to support a default judgment.[45]

There is no prejudice in this case.  Plaintiffs filed suit on October 31, 2016, and it served Defendants on November 12, 2016. Under these facts, Defendants' answer would have been due on December 5, 2016. Defendants are moving to set aside the Entry of Default less than thirty days after the Entry of Default. Further, there is no indication that Bishop Jones – an individual Defendant – has been served with process. And, Bishop Jones has not answered suit as of today. Defendants are ready to proceed on the merits.

## C.  Defendant has presented a meritorious defense.

"In determining whether a meritorious defense exists, the underlying concern is whether there is some possibility that the outcome of the suit after a full

---

[43] *Lacy v. Sitel Corp.,* 227 F.3d 290, 293 (5th Cir. 2000)(quoting *General Tel. Corp. v. General Tel. Answering Serv.,* 277 F.2d 919, 921 (5th Cir. 1960)).
[44] *Id.* (quoting *Berthelson v. Kane,* 907 F.2d 617, 621 (6th Cir. 1990)).
[45] *See id.*

**DEFENDANTS'**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**
**AND BRIEF IN SUPPORT - Page 8**

trial will be contrary to the result achieved by the default."[46]   This is not a high

burden, but, nevertheless, Defendant has meritorious defenses to Plaintiffs' claims.

These defenses include, but are not limited to the following: (1) The Board

has been named as a Defendant, but it is not a business entity; it is not a separate

entity at all; rather, it is merely an ecclesiastic board within the Church; (2) Plaintiffs

allege that Bishop Jones was Defendants' employee at the time of the underlying

abuse, but (a) the Board has no employees as it is not a separate entity, and (b) the

Church did not employ Bishop Jones at the time of the alleged abuse; (3) Even

assuming Bishop Jones was Defendants' employee (which Defendants' strongly

dispute), the alleged sexual misconduct was outside the course and scope of any

conceivable employment; (4) Plaintiffs Complaint fails to identify any harmful

conduct or abuse directed towards Plaintiff, J.S.; rather, Plaintiffs merely allege that

Bishop Jones was "attempting to groom" J.S.; and (5) Plaintiffs Complaint alleges

causes of action for Intentional Infliction of Emotional Distress and Negligence

based on occurring as early as 1995, which falls well outside of the statute of

limitations.

---

[46] *In re OCA,* 551 F.3d 359, 373 (5th Cir. 2008).

**C.  Other factors weigh in favor of setting aside Entry of Default.**

First, there is no evidence suggesting that the Church's failure to file an answer was in bad faith. To the contrary, the evidence proves that the Church's employees did not deliberately hide, conceal, misplace, throw away, or destroy the complaint.

Second, the Church has acted expeditiously to correct the entry of default. It has filed this Motion to Set Aside Default within fourteen days of learning about the entry of default. Notably, Plaintiff has not even served the third defendant – James L'Keith Jones.

Third, the exceedingly high amount of Plaintiffs' requested default - $12,200,000 – weighs in favor of setting aside the entry of default. In *Seven Elves*, the Fifth Circuit reversed a trial court's refusal to set aside a default in the amount of $250,000 because "the amount of money involved is very great, itself militating in favor of a full trial on the merits."[47]

**III.**

**Conclusion**

---

[47] *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 403 (5th Cir. 1981).

Defendants have established "good cause" to set aside the entry of default in this matter.  Thus, Defendants respectfully requests that this Court grant its motion and set aside the default entered in this case.

Respectfully submitted,

By:  */s/Justin L. Jeter*
Justin L. Jeter
State Bar No. 24012910
JETER MELDER, LLP
1111 S. Akard Street, Suite 100
Dallas, Texas 75215
Tel: 214.699.4758
Fax: 214.593.3663
Email: justin@jetermelder.com

**ATTORNEY FOR DEFENDANT**

**CERTIFICATE OF CONFERENCE**

This is to certify that, on January 2, 2017, I called Plaintiffs' counsel, Jerry Matthews and Ron McLaurin, about setting aside the Clerk's entry of default in this matter.  Neither Mr. Matthews nor Mr. McLaurin answered, and I left detailed voice messages with them. Given the time-sensitive nature of the relief sought, I am filing this motion.

By:  */s/Justin L. Jeter*
Justin L. Jeter

**DEFENDANTS'**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**
**AND BRIEF IN SUPPORT - Page 11**

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been filed with the Clerk of Court on January 3, 2017, using the CM/ECF system and was served on the following:

Jerry G. Matthews
300 West Bedford Street
Dimmitt, TX 79027

Ron McLaurin
1401 Crickets Avenue
Lubbock, TX 79401

By: *\s\Justin L. Jeter*
     Justin L. Jeter

**DEFENDANTS'**
**MOTION TO SET ASIDE THE ENTRY OF DEFAULT**
**AND BRIEF IN SUPPORT - Page 12**