**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**AMARILLO DIVISION**

| | | |
|---|---|---|
| **KIMBERLY D. POLLARD and** | § | |
| **J.S. (MINOR CHILD),** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case No. 2:16-cv-000238-J** |
| **v.** | § | |
| | § | |
| **CHURCH OF GOD IN CHRIST, INC.;** | § | |
| **CHURCH OF GOD IN CHRIST,** | § | |
| **BOARD OF BISHOPS; and BISHOP** | § | |
| **JAMES L'KEITH JONES** | § | |
| | § | |
| **Defendants.** | § | |

---

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS**

---

Defendant, Church of God in Christ, Inc. (the Church), pursuant to Federal

Rule of Civil Procedure 56 and Local Rule 56.5(a), files its Brief in Support of Motion

of Final Summary Judgment on Kimberly Pollard's Claims as follows:

# TABLE OF CONTENTS

I.   Summary Judgment Facts.... 5

    A.   The National Church's Civil and Ecclesiastical Structures.... 5

    B.   Ms. Pollard's Sworn Testimony.... 8

II.   Arguments & Authorities.... 15

    A.   The Statute of Limitations bars all of Ms. Pollard's claims for conduct occurring before October 31, 2011.... 15

    B.   Ms. Pollard's vicarious liability claims fail because Jones's conduct involves a "purely personal pursuit" outside of any agency.... 17

    C.   There is no "extreme and outrageous" conduct and intentional infliction of emotion distress does not apply to the National Church in this circumstance.... 21

    D.   Ms. Pollard's negligent supervision claims because the National Church had no knowledge of their relationship until it had already ended and no reason to foresee that they would have relationship.... 26

III.  Conclusion.... 27

## TABLE OF AUTHORITIES

*Baptist Mem'l Hospital v. Sampson,* 969 S.W.2d945, 947 (Tex. 1998).... 17

*Brewerton v Dalrymple,* 997 S.W.2d 212, 215-16 (Tex. 1999).... 22, 23

*Doe v. St. Stephen's Episcopal Sch.*, 382 Fed. Appx. 386, 388 (5th Cir. 2010).... 14, 15

*Geiger v. Varo, Inc.,* 1994 Tex. App. LEXIS 3937, *14 (Tex. App. – Dallas 1994, writ denied).... 20, 27

*Golden Spread Council, Inc. #562 of the BSA v. Akins,* 926 S.W.2d 287, 290 (Tex. 1996).... 27

*Hein v. Harris Co.,* 557 S.W.2d 366, 368 (Tex. Civ. App. – Houston [1[st] Dist.] 1977, writ ref'd n.r.e.).... 17, 18

*Hoffmann-LaRoche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004).... 22

*Kelly v. Church of God in Christ, Inc.*, 2011 Tex. App. LEXIS 3604, *36 (Tex. App. – Fort Worth 2011, pet. denied).... 22, 23, 25, 26

*Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002).... 17

*Mitchell v. Ellis,* 374 S.W.2d 333, 336 (Tex. Civ. App. – Fort Worth 1963, writ ref'd).... 17, 18

*Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 444 (Tex. App. – Fort Worth 1997, pet. denied).... 16

*Southwest Dairy Products Co. v. De Frates,* 132 Tex. 556, 125 S.W.2d 282, 283 (1939).... 17

Tex. Civ. Prac. & Rem. Code Section 16.001(a)-(b).... 15

Tex. Civ. Prac. & Rem. Code Section 16.003(a).... 15

Tex. Civ. Prac. & Rem. Code Section 16.0045(a).... 15

*Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex 1993).... 23

*Viking v. Circle K Convenience Stores, Inc.,* 742 S.W.2d 732, 734 (Tex. App. – Houston [1st Dist.] 1987, writ denied).... 20

## I.

## Summary Judgment Facts

### A.  The National Church's Civil and Ecclesiastical Structures

The Church of God in Christ is the largest Christian Pentecostal denomination in the United States.[1] The membership is predominantly African-American with more than 6.5 million members and has congregations in 82 countries around the world.[2] The Church of God in Christ has well-defined ecclesiastical and civil structures.[3]

The Church of God in Christ's ecclesiastical structure is an hierarchical religious body comprised of three levels – a national church, regional jurisdictions, and local churches.[4] All levels are bound by a common theology and a common Constitution providing, among other things, religious practice, theology, mechanisms for appointing local pastors and corporate governance.[5]

The Church of God in Christ's civil structure is composed of distinct corporations at each ecclesiastical level.[6] The National Church, which Plaintiff has sued in this case, is an active Tennessee non-profit corporation headquartered in

---

[1] *See* Henderson Affidavit, App. 055.
[2] *See id.*
[3] *See id.* at 055-056**.**
[4] *See id.* at 055**.**
[5] *See id.*
[6] *See id.* at 056**.**

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 5**

Memphis.[7] Each jurisdiction is a separate civil entity formed in the state where it resides and with its own officers and directors.[8] Within each jurisdiction, the local churches are either business entities or unincorporated associations.[9]

In 2013, Defendant, James L'Keith Jones, became the Jurisdictional Bishop for the Church of God in Christ Ecclesiastical Jurisdiction of New Mexico.[10] The New Mexico Jurisdiction is an active New Mexico domestic nonprofit corporation according to the New Mexico Secretary of State's records.[11] Its directors are Defendant Jones, Claude L. Bell, Charles H. Hollis, Sr., and Andre Singletary.[12] None of these directors are directors or officers of the National Church.[13]

Jones is not and has never has been an officer, director, or employee of the National Church.[14] The National Church has never paid him a salary or other wages and, thus, it has never issued him a W-2 or a 1099.[15] Jones receives no remuneration from the National Church.[16]

---

[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *See id.*
[12] *See id.*
[13] *See id.*
[14] *See id.*
[15] *See id.*
[16] *See id.*

Likewise, Jones has no authority to hire, fire, or direct the National Church's employees.[17] He further has no authority to act as an agent for the National Church in the civil context.[18] For example, he does not have the authority to bind the National Church to agreements or contracts.[19]

Jones's ecclesiastical duties and responsibilities are detailed in the Church's Constitution.[20] Jones does not have the authority to take any civil or corporate duties on behalf of the National Church.[21] As a jurisdictional bishop, Jones's ecclesiastical duties include the right to appoint and ordain church elders; to be the National Church's representative for church matters within his ecclesiastical jurisdiction; to preside over the Jurisdictional Assembly (which is another ecclesiastical body); and, to appoint and or remove District Superintendents and other appointed jurisdictional officers.[22] The acts Ms. Pollard attributes to Jones regarding sexual misconduct do not fall within the scope of any of these purely ecclesiastical duties.[23]

---

[17] *See id.* at 057.
[18] *See id.*
[19] *See id.*
[20] *See id.*
[21] *See id.*
[22] *See id.*
[23] *See id.*

CHURCH OF GOD IN CHRIST, INC.'S
BRIEF IN SUPPORT OF
MOTION FOR FINAL SUMMARY JUDGMENT ON
KIMBERLY POLLARD'S CLAIMS - Page 7

The National Church's Constitution contains a procedure for the intake and handling of accusations of inappropriate conduct by its pastors and bishops.[24] Ms. Pollard utilized this process when she lodged a complaint against Jones in May 2016.[25] Ms. Pollard's May 2016 complaint against Jones is the only complaint against Jones that has ever been presented to the Board of Bishops.[26]

## B. Ms. Pollard's Sworn Affidavit

Ms. Pollard provides the following summary judgment facts in a sworn affidavit:

- On January 29, 1979, Ms. Pollard was born.[27]

- In 1995, Ms. Pollard had her first sexual encounter with then-pastor Jones.[28]

- She actively hid her relationship with then-pastor Jones by lying about it when her mother asked her on one occasion.[29]

- In 2000, she moved to Texas.[30] When Jones traveled to Texas from New Mexico without his wife, she and Jones would "be together physically and sexually"– although "[n]ot every encounter was a sexual one."[31]

---

[24] *See id.*
[25] *See id.*
[26] *See id.* at 57-58.
[27] *See* Pollard Affidavit, App. 001.
[28] *See id.*
[29] *See id.* at 002.
[30] *See id.* at 003.
[31] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 8**

- In about 2002, Ms. Pollard stopped seeing Jones and "[their] communication came to a halt, with phone calls, emails and texts on each other's birthdays or just small talk cause conversation here and there."[32]

- In November 2014 – twelve years later, Defendant Jones apparently told Ms. Pollard that he was coming to Lubbock to see his ill mother, and he wanted to see Ms. Pollard.[33]

- On November 12, 2014, Ms. Pollard drove to Defendant Jones's hotel and waited in the hotel's lobby for him to tell her what room he was in over a series of text messages:

  o Ms. Pollard at 4:54 pm: Pulling up [to the hotel][34]

  o Ms. Pollard at 4:56 pm: Where do I go (sic)[35]

  o Ms. Pollard at 5:01pm: Really? I'm sitting in the lobby[36]

  o Jones at 5:02 pm: Ok. Come to elevator coming to get u. 1306[37]

  o Ms. Pollard at 5:04 pm: I don't have an access card to get to your floor. I'm on the elevator. You should have left one at the front desk for me.[38]

  o Jones at 5:04 pm: Let me know when you get to elevator.[39]

---

[32] *Id.*
[33] *See id.*
[34] *Id.* at 015.
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 9**

- Hours later, Ms. Pollard initiated a new text exchange:

  o Ms. Pollard at 11:44 pm: In bed?[40]

  o Jones at 11:58 pm: Not yet …. Still up with my brother. What are you doing?[41]

  o Ms. Pollard at 11:59 pm: Oh ok. Just showered and now laying in my bed.[42]

  o Defendant Jones at 12:00 am: You are very very special to me[43]

  o Ms. Pollard at 12:01 am: I can definitely say the same about you. Seems like tonight was a dream.[44]

- On November 13, 2014, Ms. Pollard initiated another text exchange:

  o Ms. Pollard at 8:28 am: Good morning my love[45]

  o Ms. Pollard at 10:29 am: I have to ask this before I make plans and they don't fall through. Are you still leaving tomorrow (sic)[46]

  o Jones at 10:31 am: I'm still here … not sure if I have to go to Hobbs this evening. I will let you know (sic) You look great and glowing[47]

  o Ms. Pollard at 10:33 am: Really??? Okay. That glow is all YOU[48]

---

[39] *Id.* at 016.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] *Id.* at 017.
[47] *Id.*
[48] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 10**

- On December 17, 2014, Ms. Pollard agreed to another hotel rendezvous with

  Jones after arranging late night childcare for her daughter:

  - Ms. Pollard at 6:58 pm: Are you staying in Clovis tonight[49]

  - Jones at 7:35 pm: Yes[50]
  - Ms. Pollard at 7:35 pm: I see[51]

  - Ms. Pollard at 8:25 pm: I'm a little disappointed that you didn't tell me earlier that you were staying in Clovis. considering! But I got you[52]

  - Jones at 8:38 pm: Come on[53]

  - Ms. Pollard at 8:43 pm: Really![54]

  - Jones at 8:45 pm: Yes[55]

  - Ms. Pollard at 8:46 pm: You're nuts! What am I supposed to do with [my daughter]?[56]

  - Ms. Pollard at 8:50 pm: Exactly! Your unbelievable and my feelings are hurt. Have a good night. Good day and drive back safely. Love you[57]

  - Ms. Pollard at 9:16 pm: I'm coming[58]

  - Ms. Pollard at 9:34 pm: Leaving in about 20 minutes[59]

---

[49] *Id.* at 019.
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] Id.
[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.* at 020.
[59] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 11**

- o Ms. Pollard at 10:10 pm: Where are you staying. My phone might be dead left my car charger[60]

- o Ms. Pollard at 12:04 am: I'm here[61]
- On December 18, 2014, presumably now home in Lubbock after visiting

  Jones in his Clovis hotel, Ms. Pollard initiated yet another text exchange with

  Jones:

  - o Ms. Pollard at 8:28 pm: [My daughter] absolutely lit up when I kissed her forehead and told her it was from you. WE really love you and I personally want this (us) with all of my heart! I'm literally in the bed now so good night. I can't say sweet dreams because it can't get any sweeter than last night. Fyi. You were AMAZING!!! That supplement worked *wink*[62]

  - o Jones at 8:34 pm: LOL!!! I don't have any supplements[63]

  - o Ms. Pollard at 8:35 pm: LIES!!! Okay babe![64]

  - o Jones at 8:36 pm: I promise. I don't take supplements and besides I would not know what to take. You saw me take supplement (sic)[65]

  - o Ms. Pollard at 8:37 pm: You CANNOT tell me you we (sic) doing all of that simply because of a condom!?! Lol[66]

  - o Ms. Pollard at 8:38 pm: I was totally okay with you taking a "supplement" because it allowed me to get SEVERAL in ... lol. Just saying[67]

---

[60] *Id.* at 021.
[61] *Id.*
[62] *Id.*
[63] *Id.*
[64] *Id.* at 022.
[65] *Id.*
[66] *Id.*

- On February 10, 2016, Ms. Pollard and Jones exchanged texts regarding their consensual relationship:

  - Jones at 4:48 pm: We are suppose (sic) to have a serious talk.??? (sic)[68]

  - Ms. Pollard at 5:05 pm: LOL. Ok. WE LIGHTLY touched on it while you were but we agreed that my birthday wasn't the time for it. Apparently you don't remember[69]

  - Ms. Pollard at 5:06 pm: Where are you in presenting your divorce to Blake? I know you said it's a long process so I'm just wondering where we are with that[70]

  - Jones at 5:08 pm: You know Feb 13th is national breakup day[71]

  - Ms. Pollard at 5:08 pm: Cruel[72]

  - Ms. Pollard at 5:09 pm: What are you trying to say? You're breaking up with me????[73]

  - Jones at 5:10 pm: No it seem like you are ... I don't recall us even discussing this at all two weeks ago[74]

  - Ms. Pollard at 5:12 pm: Not at all. Nothing I've said remotely sound like I'm breaking up with you lol.[75]

---

[67] *Id.*
[68] *Id.* at 033.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] *Id.* at 034.
[73] *Id.*
[74] *Id.*
[75] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 13**

- Ms. Pollard at 6:06 pm: Like I told you while you were here, just the fact that you put us first and celebrated my day with me, spoke Volumes and erased so much. I'm all in, you have ALL of me and I just needed to know that this will progress into what we both want. And not in 4 or 5 more years.[76]

- On February 8, 2016, Ms. Pollard initiates a text exchange by sending a picture of herself in a necklace that Jones allegedly purchased for her:

    - Ms. Pollard at 5:42 pm: There's your necklace that went perfectly with my top[77]

    - Jones at 5:46: Looks great[78]

    - Ms. Pollard at 5:54 pm: I missssssssssssssss YOU![79]

- At 6:20 pm, Ms. Pollard texts Jones a picture of an engagement ring with the message: "For future reference."[80] This results in the following exchange:

    - Ms. Pollard at 8:03 pm: Just thought that I'd help you out, so that you'd know what I like … make it easier on you.[81]

    - Jones at 8:03 pm: I will buy what's in the budget[82]

    - Ms. Pollard at 8:05 pm: As long as it's more than a Cracker Box budget ring, I'm good![83]

---

[76] *Id.* at 035.
[77] *Id.* at 044.
[78] *Id.*
[79] *Id.*
[80] *Id.* at 045.
[81] *Id.* at 046.
[82] *Id.*
[83] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 14**

- On February 13, 2016, Ms. Pollard exchanged additional texts with Jones

  after apparently receiving flowers:

  - Ms. Pollard at 7:45 pm: I think for future reference (because I do LOVE getting flowers and everything else from you lol), you should use a local place.[84]

  - Ms. Pollard at 12:16 pm: I got my flowers!!!!! Thank you so much. You make me feel like the best woman in the world! Thank you baby. I love you.[85]

- Three days later, Ms. Pollard claims that Jones made a comment to her

  daughter on a video call that precipitated filing suit.[86]

- Ms. Pollard never reported misconduct by Jones to the National Church until

  the summer of 2016.[87]

## II.

## Arguments and Authorities

**A. The statute of limitations bars all of Ms. Pollard's claims related to conduct before October 31, 2014.**

Because this is a diversity case, Texas's statue of limitations law applies.[88]

Typically, a two-year statute of limitations governs intentional infliction of emotional

---

[84] *Id.* at 030.

[85] *Id.*

[86] *See id.* at 005.

[87] *See id.* at 050.

[88] *See Doe v. St. Stephen's Episcopal Sch.*, 382 Fed. Appx. 386, 388 (5th Cir. 2010)(citing *Erie R.R. v. Tompkins,* 304 U.S. 64, 78-79, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 15**

distress and negligence-based causes of action.[89] In stark contrast to the text messages in evidence, Ms. Pollard characterizes Jones's underlying conduct as sexual assault.[90] Assuming this is true for purposes of this motion, limitations for personal injury in sexual assault cases is five years from when the cause of action accrues.[91] Further, the statute of limitations is tolled until the plaintiff turns eighteen.[92]

Ms. Pollard's sexual assault-based claims accrued when they occurred. Ms. Pollard claims that she did not discover "the causal connection between the abuse and the injuries she suffered … ."[93]  But, this wholly unsupported, conclusory sentence does not toll limitations. "Sexual assault – an impermissible and intentional invasion of the victim's person – is in and of itself an injury 'actionable independently and separately from mental suffering or other injury.'"[94]

Ms. Pollard complains of conduct occurring in two finite time periods separated by twelve years: (1) 1995 to 2002, and (2) 2014 to 2016. Under the five-year limitations for sexual assault-based claims – which is the most generous potentially applicable statute of limitations, Ms. Pollard's claims related to conduct

---

[89] *See* Tex. Civ. Prac. & Rem. Code Section 16.003(a).
[90] *See* Plaintiff's Original Complaint, ECF 1, p. 4, para. 28; p. 5, para. 30.
[91] *See* Tex. Civ. Prac. & Rem. Code Section 16.0045(a).
[92] *See id.*at Section 16.001(a)-(b).
[93] Plaintiff's Original Complaint, at 3.
[94] *Doe v. St. Stephen's Episcopal Sch.,* 382 Fed. Appx. at 389 (quoting *Harned v. E-Z Fin. Co.,* 151 Tex. 641, 254 S.W.2d 81, 85 (Tex. 1953).

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 16**

between 1995 and 2002 expired in 2007. Ms. Pollard turned eighteen on January 29, 1997.[95] To the extent any claims existed when she turned eighteen, those claims expired five years later on January 29, 2002. Similarly, any claims that arose through 2002 expired in 2007. For claims related to this first time period, she filed suit *nine years after limitations expired.*

Notably, Ms. Pollard has not pled that Jones's conduct was a "continuing tort." This is likely because of the twelve-year gap identified in her sworn affidavit. In the unlikely event that she raises this issue for the first time in her summary judgment response, it would not save her claims from limitations. Under the "continuing tort" theory, conduct outside of the statute of limitations cannot be the basis for a damages claim.[96] "[W]hen the continuing tort doctrine is applied, a plaintiff can only recover damages for the two years immediately preceding the date the lawsuit was filed."[97] Simply put, Ms. Pollard has no live claim for damages – under any plausible theory – for conduct that occurred before October 31, 2011.

**B. Ms. Pollard's vicarious liability claims fail because Jones's conduct involves a "purely personal pursuit" outside of any agency.**

The vast majority of Ms. Pollard's Original Complaint asserts vicarious liability theories against the National Church. Indeed, Ms. Pollard pled only one direct

---

[95] *See* Pollard Affidavit, App. 001.
[96] *See Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 444 (Tex. App. – Fort Worth 1997, pet. denied).
[97] *Id.*

liability theory against the National Church – negligent supervision of Jones.[98] All of Ms. Pollard's remaining claims seek to impose vicarious liability on the National Church for Jones's intentional conduct.

Vicarious liability focuses on the relationship between a tortfeasor's alleged misbehavior and the work he was hired to do. Under the doctrine of *respondeat superior,* an employer is liable for an employee's torts if: (1) the act is within the employee's general authority; (2) the act is in furtherance of the employer's business; and (3) the act is aimed to accomplish the objective for which the employee was hired.[99] If the employee was acting within the course and scope of employment at the time he or she committed the wrongful act, liability for the act is imputed to the employer.[100]

Importantly, employers are *not* liable for an employee's "purely personal pursuits."[101] The employer/employee relationship is temporarily suspended and the employer is not liable for the employee's acts when an employee strays from his or her work for a personal pursuit.[102] This holds true regardless of whether the

---

[98] *See* Plaintiff's (sic) Original Complaint, ECF 1, p. 3.
[99] *See Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002).
[100] *See Baptist Mem'l Hospital v. Sampson,* 969 S.W.2d945, 947 (Tex. 1998).
[101] *See Mitchell v. Ellis,* 374 S.W.2d 333, 336 (Tex. Civ. App. – Fort Worth 1963, writ ref'd); *Hein v. Harris Co.,* 557 S.W.2d 366, 368 (Tex. Civ. App. – Houston [1st Dist.] 1977, writ ref'd n.r.e.).
[102] *Southwest Dairy Products Co. v. De Frates,* 132 Tex. 556, 125 S.W.2d 282, 283 (1939).

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 18**

deviation occurred during working hours, whether the employer consented or objected to the deviation, or whether the deviation was only for a brief moment.[103]

Although Ms. Pollard's Original Complaint is laden with vicarious liability buzzwords and concepts, her affidavit and text messages reveal a "personal pursuit" wholly unrelated to the National Church's business. According to Ms. Pollard, she and Jones often discussed *their* relationship – being "in a great place at this time in *our* relationship;"[104] Jones promising "to show me how serious he was about *us*;"[105] "changes that would occur regarding *his* divorce and *our* union;"[106] Jones doing "something to really prove to me that he was working on *us* being together."[107] These statements all come from Ms. Pollard's affidavit, which she submitted to "show[] the true nature of our relationship."[108]

Similarly, Ms. Pollard describes in her affidavit – and provides actual text exchanges – a growing frustration that Jones will not divorce his wife or propose to her. During the latter part of 2015, Ms. Pollard "was showing him rings for when the time came."[109] Later in February 2016, Ms. Pollard was asking Jones for updates on

---

[103] *See Mitchell v. Ellis,* 374 S.W.2d 333, 336 (Tex. Civ. App. – Fort Worth 1963, writ ref'd); *Hein v. Harris Co.,* 557 S.W.2d 366, 368 (Tex. Civ. App. – Houston [1st Dist.] 1977, writ ref'd n.r.e.).
[104] Pollard Affidavit, App. 004 (emphasis added).
[105] *Id.* (emphasis added).
[106] *Id.* (emphasis added).
[107] *Id.* at 005 (emphasis added).
[108] *Id.* at 006.
[109] *Id.* at 005.

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 19**

his divorce.[110] She even texted to Jones a picture of an engagement ring with the statement "[f]or future reference."[111]

Additionally, Jones and Ms. Pollard's meetings occurred after hours at hotels. For example, Ms. Pollard drove over 100 miles from Lubbock to Clovis to meet Jones at midnight at a Hampton Inn.[112] She also met Jones at a Lubbock hotel when he was in town to visit his sick mother.[113] And, they met at an Embassy Suites in Lubbock for Ms. Pollard's birthday.[114] Again, they discussed *their relationship* at these encounters – where they were in it, whether Jones was divorcing his wife, and what type of ring Ms. Pollard wanted from him "when the time came."

Importantly, *none* of Ms. Pollard's affidavit, the text communications, pictures, or videos describes or even mentions the National Church – except in the concept of divorce as it pertains to *their* relationship. Rather, *everything* indicates a "purely personal pursuit" - the place of their meetings (hotels), the after hours time of their meetings (at night and for personal occasions like birthdays and Valentine's Day), and talk about *their* relationship (including divorce and marriage).

---

[110] *See id.* at 033.
[111] *Id.* at 045.
[112] *See id.* at 004.
[113] *See id.* at 003-004.
[114] *See id.* at 005.

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 20**

In stark contrast, Jones is not a civil agent or employee of the National Church. The National Church is a Tennessee nonprofit corporation, and Jones is not an officer or director, or its employee.[115] Rather, he is presumably a civil employee or agent for his own Jurisdiction's business entity – a business entity that Ms. Pollard chose not to sue.

Finally, Ms. Pollard's assault claims do not trigger vicarious liability. "In Texas it is not within the scope of a servant's authority to commit an assault on a third person."[116] Here, Ms. Pollard – despite her affidavit and text messages to the contrary – complains of "sexual abuse" and "sexual molestation" among other intentional behavior.[117] The National Church is not vicariously liable for these intentional torts.[118]

### C. There is no "extreme and outrageous" conduct and intentional infliction of emotion distress does not apply to the National Church.

Because the statute of limitations bars Ms. Pollard's pre-2011 claims, the National Church focuses on Jones's alleged 2014 to 2016 conduct. This is the conduct detailed in Ms. Pollard's sworn affidavit and supported by accompanying

---

[115] *See* Henderson Affidavit, App. 056.

[116] *Geiger v. Varo, Inc.,* 1994 Tex. APP. LEXIS 3937, *14 (Tex. App. – Dallas 1994, writ denied)(citing *Green v. Jackson,* 674 S.W.2d 395, 398 (Tex. App. – Amarillo 1984, writ ref'd n.r.e.)).

[117] Plaintiff's (sic) Original Complaint, p. 4.

[118] *See Viking v. Circle K Convenience Stores, Inc.,* 742 S.W.2d 732, 734 (Tex. App. – Houston [1st Dist.] 1987, writ denied).

text exchanges. As a matter of law, this conduct does not constitute "extreme and outrageous" conduct.

Ms. Pollard alleges that the National Church is vicariously liable for Jones's intentional infliction of emotional distress. To recover under this theory, Ms. Pollard must prove that "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress."[119] Whether conduct is "extreme and outrageous" is a question of law for the Court.[120]

And, it is a very high bar for conduct to qualify as "extreme and outrageous." This high bar comes directly from the Restatement: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or the he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."[121] "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, meant that it is extreme or outrageous for purposes of intentional infliction of emotional

---

[119] *Kelly v. Church of God in Christ, Inc.,* 2011 Tex. App. LEXIS 3604, *36 (Tex. App. – Fort Worth 2011, pet. denied)(citing *Hoffmann-LaRoche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004)).
[120] *See Zeltwanger,* 144 S.W.3d at 445.
[121] *Brewerton v Dalrymple,* 997 S.W.2d 212, 215-16 (Tex. 1999)(quoting Restatement (Second) of Torts Section 46(1)).

distress."[122] Consequently, it is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[123] Obviously, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities."[124]

First, Ms. Pollard was an adult during this time period. Ms. Pollard met Jones at a Lubbock hotel in November 2014.[125] According to her affidavit and the text messages, this was their first physical encounter since 2002.[126] Ms. Pollard was 35 years old when she met up with him in November 2014; she was 37 when she last communicated with Jones.

Ms. Pollard's own affidavit text messages belie any qualifying "extreme or outrageous" conduct. Rather, she describes a mutual relationship and her own frustration with Jones's failure or simply unwillingness to marry her as detailed above.

---

[122] *Brewerton,* 997 S.W.2d at 215.

[123] *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex 1993).

[124] *Kelly,* 2011 Tex. App. LEXIS at *36.

[125] *See* Pollard Affidavit, App. 003.

[126] *See id.*

Similarly, Ms. Pollard's text exchanges with Jones do not indicate "extreme and outrageous" conduct. Rather, she initiated often-playful conversations with Jones.

- The morning after her November 2014 hotel encounter with Jones, Ms. Pollard sent the following texts:

  ○ She initiated a conversation with "Good morning my love"[127]

  ○ She responded to Jones's statement about her "glow" with "[t]hat glow is all YOU!"[128]

- The day after her December 2014 hotel encounter with Jones, Ms. Pollard send the following texts:

  ○ Regarding her daughter and herself, "WE really love you and I personally want this (us) with all of my heart."[129]

  ○ She continued, "I can't say sweet dreams because it can't get any sweeter than last night. Fyi. You were AMAZING!!"[130]

  ○ She then joked about Jones's apparent use of sexual virility supplements noting, "I was totally okay with you taking a "supplement" because it allowed me to get SEVERAL in ... lol. Just saying.[131]

---

[127] Pollard Affidavit, App. 017.
[128] *Id.*
[129] *Id.* at 021.
[130] *Id.*
[131] *Id.* at 022.

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 24**

- She also referenced them being in a relationship in February 2016 and assured Jones she want "breaking up" with him.

  - "What are you trying to say? You're breaking up with me????"[132]

  - "Nothing I've said remotely sound (sic) like I'm breaking up with you lol."[133]

This evidence – which Ms. Pollard voluntarily provided to the National Church – details – again, in her own words – "the true nature of [their] relationship."[134] She did not react as if Jones's conduct was "extreme and outrageous." Rather, she drove to meet him at hotels; she playfully text messaged with him; and, tellingly, she never reported any of this to the National Church until 2016. As a matter of law, none of Jones's 2011 to 2016 conduct constitutes "extreme and outrageous" conduct as defined by longstanding Texas law.

Additionally, intentional infliction of emotional distress is a "gap filler" cause of action that simply does not apply here.[135] In fact, it applies "in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has not other recognized theory of redress."[136]

---

[132] *Id.* at 034.
[133] *Id.*
[134] *Id.* at 006.
[135] *See Kelly v. Church of God in Christ, Inc.,* 2011 Tex. App. LEXIS 3604, *36-37 (Tex. App. – Fort Worth 2011, pet. denied).
[136] *Id.* at *37.

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 25**

In similar case involving the National Church, the Fort Worth Court of Appeals found that the plaintiff's "core" complaint against the National Church was negligence.[137] Ms. Pollard's allegations against the National Church are – like the plaintiff in *Kelly* – allegations of negligently supervising Jones and, thus, intentional infliction of emotional distress is not available to her.

**D.  Ms. Pollard's negligent supervision claims because the National Church had no knowledge of their relationship until it had already ended and no reason to foresee that they would have relationship.**

In her Original Complaint, Ms. Pollard alleges a single theory of direct liability against the National Church – negligent supervision.[138] Specifically, she asserts that the National Church "knew or should have known of the illicit conduct that [] Jones was engaging in with Plaintiff Pollard because a basic investigation would have revealed these facts."[139] Ms. Pollard's circular theory (you would have known about us if you had investigated us) does not evidence negligent supervision.

Negligent supervision – by definition – requires some degree of knowledge or ordinary care. Specifically, it requires evidence that the employer "(1) is incompetent or unfit *and* (2) the employer knew or in the exercise of ordinary care

---

[137] *See id.* at *38.
[138] See Plaintiff's Original Complaint, ECF 1, p. 3.
[139] *Id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 26**

should have known of the incompetence or unfitness."[140] Here, Ms. Pollard

affirmatively states that she never reported Jones's conduct until February 2016.[141]

By then, all of the alleged conduct had ceased.

Further, in the context of determining whether a duty exists, Courts consider

foreseeability.[142] From 2000 to 2016, Ms. Pollard did not live within Bishop Jones's

ecclesiastical jurisdiction.[143] Indeed, she did not even live in the same state as Jones

- she lived in Texas.[144] She met Jones at hotels. She communicated with Jones

through her telephone. The National Church could not foresee – according to her

own affidavit and evidence – that Jones and Ms. Pollard would carry on a

relationship across state lines, wholly unrelated to the National Church's work.

### III.

### Conclusion

The Church respectfully asks the Court to grant its Motion for Final Summary

Judgment on Kimberly Pollard's Claims, dismiss Plaintiff's claims against the Church,

and award any further relief the Church is entitled to.

---

[140] *Geiger v. Varo, Inc.,* 1994 Tex. App. LEXIS 3937, *22 (Tex. App. – Dallas, 1994, writ denied)(citing *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex. Civ. App. – Tyler 1979, writ ref'd n.r.e.)).
[141] *See* Ms. Pollard's Answers to Church of God in Christ Inc.'s First Set of Interrogatories, App. 050.
[142] *See Golden Spread Council, Inc. #562 of the BSA v. Akins,* 926 S.W.2d 287, 290 (Tex. 1996).
[143] *See* Pollard Affidavit, App. 003.
[144] *See id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**KIMBERLY POLLARD'S CLAIMS - Page 27**

Respectfully submitted,

By: */s/Justin L. Jeter*
     Justin L. Jeter
     State Bar No. 24012910
     JETER MELDER, LLP
     1111 S. Akard Street, Suite 100
     Dallas, Texas 75215
     Tel: 214.699.4758
     Fax: 214.593.3663
     Email: justin@jetermelder.com

**ATTORNEY FOR THE NATIONAL CHURCH**

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing has been filed with the Clerk of Court on August 18, 2017, using the CM/ECF system and was served on the following:

Jerry G. Matthews
300 West Bedford Street
Dimmitt, TX 79027

Ron McLaurin
1401 Crickets Avenue
Lubbock, TX 79401

Ronald Spriggs
Levi Spriggs
1011 S. Jackson
Amarillo, TX 79101

By: */s/Justin L. Jeter*
     Justin L. Jeter