## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

| | | |
|---|---|---|
| **KIMBERLY D. POLLARD and** | § | |
| **J.S. (MINOR CHILD),** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **Case No. 2:16-cv-000238-J** |
| **v.** | § | |
| | § | |
| **CHURCH OF GOD IN CHRIST, INC.;** | § | |
| **CHURCH OF GOD IN CHRIST,** | § | |
| **BOARD OF BISHOPS; and BISHOP** | § | |
| **JAMES L'KEITH JONES** | § | |
| | § | |
| **Defendants.** | § | |

## CHURCH OF GOD IN CHRIST, INC.'S
## BRIEF IN SUPPORT OF
## MOTION FOR FINAL SUMMARY JUDGMENT ON
## J.S.'S CLAIMS

Defendant, Church of God in Christ, Inc. (the Church), pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.5(a), files its Brief in Support of Motion for Final Summary Judgment on J.S.'s Claims as follows:

I.

Summary Judgment Facts

A. The National Church's Civil and Ecclesiastical Structures

The Church of God in Christ is the largest Christian Pentecostal denomination in the United States.[1] The membership is predominantly African-American with more than 6.5 million members and has congregations in 82 countries around the world.[2] The Church of God in Christ has well-defined ecclesiastical and civil structures.[3]

The Church of God in Christ's ecclesiastical structure is an hierarchical religious body comprised of three levels – a national church, regional jurisdictions, and local churches.[4] All levels are bound by a common theology and a common Constitution providing, among other things, religious practice, theology, mechanisms for appointing local pastors and corporate governance.[5]

The Church of God in Christ's civil structure is composed of distinct corporations at each ecclesiastical level.[6] The National Church, which Plaintiff has sued in this case, is an active Tennessee non-profit corporation headquartered in

---

[1] *See* Henderson Affidavit, App. 055.
[2] *See id.*
[3] *See id.* at 055-056.
[4] *See id.* at 055.
[5] *See id.*
[6] *See id.* at 056.

Memphis.[7] Each jurisdiction is a separate civil entity formed in the state where it resides and with its own officers and directors.[8] Within each jurisdiction, the local churches are either business entities or unincorporated associations.[9]

In 2013, Defendant, James L'Keith Jones, became the Jurisdictional Bishop for the Church of God in Christ Ecclesiastical Jurisdiction of New Mexico.[10] The New Mexico Jurisdiction is an active New Mexico domestic nonprofit corporation according to the New Mexico Secretary of State's records.[11] Its directors are Defendant Jones, Claude L. Bell, Charles H. Hollis, Sr., and Andre Singletary.[12] None of these directors are directors or officers of the National Church.[13]

Jones is not and has never has been an officer, director, or employee of the National Church.[14] The National Church has never paid him a salary or other wages and, thus, it has never issued him a W-2 or a 1099.[15] Jones receives no remuneration from the National Church.[16]

---

[7] *See id.*
[8] *See id.*
[9] *See id.*
[10] *See id.*
[11] *See id.*
[12] *See id.*
[13] *See id.*
[14] *See id.*
[15] *See id.*
[16] *See id.*

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**J.S.'S CLAIMS - Page 3**

Likewise, Jones has no authority to hire, fire, or direct the National Church's employees.[17] He further has no authority to act as an agent for the National Church in the civil context.[18] For example, he does not have the authority to bind the National Church to agreements or contracts.[19]

Jones's ecclesiastical duties and responsibilities are detailed in the Church's Constitution.[20] Jones does not have the authority to take any civil or corporate duties on behalf of the National Church.[21] As a jurisdictional bishop, Jones's ecclesiastical duties include the right to appoint and ordain church elders; to be the National Church's representative for church matters within his ecclesiastical jurisdiction; to preside over the Jurisdictional Assembly (which is another ecclesiastical body); and, to appoint and or remove District Superintendents and other appointed jurisdictional officers.[22] The acts Ms. Pollard attributes to Jones regarding sexual misconduct do not fall within the scope of any of these purely ecclesiastical duties.[23]

---

[17] *See id.* at 057.
[18] *See id.*
[19] *See id.*
[20] *See id.*
[21] *See id.*
[22] *See id.*
[23] *See id.*

CHURCH OF GOD IN CHRIST, INC.'S
BRIEF IN SUPPORT OF
MOTION FOR FINAL SUMMARY JUDGMENT ON
J.S.'S CLAIMS - Page 4

Ms. Pollard's May 2016 complaint against Jones is the only complaint against Jones that has ever been presented to the Board of Bishops.[24]

### B. Ms. Pollard's Sworn Affidavit

On February 21, 2016, Jones was having a video phone call with Ms. Pollard and J.S.[25] During the phone call, "[Jones] stopped and then made a very poor judgment in telling her how sexy she looked in her night gown."[26] Based on this comment, Ms. Pollard "believe[s]" that Jones had "strategically planned … to violate her in the future."[27] Ms. Pollard never reported alleged misconduct by Jones to the National Church until the summer of 2016.[28]

## II.

## Arguments and Authorities

### A. Jones's alleged comment to J.S. is not "extreme and outrageous" conduct as defined by Texas courts.

Plaintiff's (sic) Original Complaint alleges that the National Church is vicariously liable for Jones's intentional infliction of emotional distress. To recover under this theory, J.S. must prove that "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the

---

[24] *See id.* at 57-58.
[25] *See* Pollard Affidavit, App. 005.
[26] *See id.*
[27] *See id.*
[28] *See id.* at 050.

defendant's actions caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe."[29] Whether conduct is "extreme and outrageous" is a question of law for the Court.[30]

The Restatement defines this conduct as follows: "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or the he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."[31] "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, meant that it is extreme or outrageous for purposes of intentional infliction of emotional distress."[32] Consequently, it is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[33] Obviously, "[l]iability does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities."[34]

---

[29] *Kelly v. Church of God in Christ, Inc.*, 2011 Tex. App. LEXIS 3604, *36 (Tex. App. – Fort Worth 2011, pet. denied)(citing *Hoffmann-LaRoche, Inc. v. Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004)).
[30] *See Zeltwanger,* 144 S.W.3d at 445.
[31] *Brewerton v Dalrymple,* 997 S.W.2d 212, 215-16 (Tex. 1999)(quoting Restatement (Second) of Torts Section 46(1)).
[32] *Brewerton,* 997 S.W.2d at 215.
[33] *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex 1993).
[34] *Kelly,* 2011 Tex. App. LEXIS at *36.

Plaintiff's (sic) Original Complaint and Ms. Pollard's affidavit allege that Jones made one inappropriate comment to J.S. The Original Complaint also mentions a comment that Jones made to Ms. Pollard – not J.S. – about dating J.S. when she turned 18. There is no allegation in the Original Complaint and no testimony in Ms. Pollard's affidavit indicating that Jones ever made any other inappropriate comments to J.S.

A single telephone comment – and Ms. Pollard's fears of "grooming" – do not constitute "extreme and outrageous" conduct as defined by Texas courts. Notably, "insults, indignities, [and] threats" do not constitute "extreme and outrageous" conduct. Texas courts have set the bar for "extreme and outrageous" conduct incredibly high, and Jones's comment does not clear this bar.

Additionally, Jones's comment about dating J.S. was not even made *to* J.S. Rather, it was made to Ms. Pollard.[35]

Finally, intentional infliction of emotional distress is a "gap filler" cause of action that simply does not apply here.[36] In fact, it applies "in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so

---

[35] *See* Plaintiff's (sic) Original Complaint, p. 3.
[36] *See Kelly v. Church of God in Christ, Inc.,* 2011 Tex. App. LEXIS 3604, *36-37 (Tex. App. – Fort Worth 2011, pet. denied).

**CHURCH OF GOD IN CHRIST, INC.'S**
**BRIEF IN SUPPORT OF**
**MOTION FOR FINAL SUMMARY JUDGMENT ON**
**J.S.'S CLAIMS - Page 7**

unusual that the victim has not other recognized theory of redress."[37] In similar case involving the National Church, the Fort Worth Court of Appeals found that the plaintiff's "core" complaint against the National Church was negligence.[38] J.S.'s allegations against the National Church are – like the plaintiff's in *Kelly* – allegations of negligently supervising Jones and, thus, intentional infliction of emotional distress is not available to her.

### B. J.S.'s vicarious liability claims fail because Jones's conduct involves a "purely personal pursuit" outside of any agency.

J.S.'s Original Complaint asserts various vicarious liability theories against the National Church. Vicarious liability focuses on the relationship between a tortfeasor's alleged misbehavior and the work he was hired to do. Under the doctrine of *respondeat superior,* an employer is liable for an employee's torts if: (1) the act is within the employee's general authority; (2) the act is in furtherance of the employer's business; and (3) the act is aimed to accomplish the objective for which the employee was hired.[39] If the employee was acting within the course and scope of employment at the time he or she committed the wrongful act, liability for the act is imputed to the employer.[40]

---

[37] *Id.* at *37.
[38] *See id.* at *38.
[39] *See Minyard Food Stores v. Goodman,* 80 S.W.3d 573, 577 (Tex. 2002).
[40] *See Baptist Mem'l Hospital v. Sampson,* 969 S.W.2d 945, 947 (Tex. 1998).

Importantly, employers are *not* liable for an employee's "purely personal pursuits."[41] The employer/employee relationship is temporarily suspended and the employer is not liable for the employee's acts when an employee strays from his or her work for a personal pursuit.[42] This holds true whether the deviation occurred during working hours, whether the employer consented or objected to the deviation, or whether the deviation was only for a brief moment.[43]

J.S.'s claims rely on conduct wholly unrelated to the National Church's business. According to Plaintiff's (sic) Original Complaint, Jones made a comment to J.S. on a video chat about how she looked in a nightgown.[44] Ms. Pollard then recounts a conversation between Jones and Pollard – not J.S. – where Jones indicated that he would date J.S. when she turned 18.[45] Ms. Pollard also feared that Jones planned to "violate her" in the future.[46]

Importantly, *none* of Jones's two offensive comments pertain to the National Church's "business" or furtherance of that "business."

---

[41] *See Mitchell v. Ellis,* 374 S.W.2d 333, 336 (Tex. Civ. App. – Fort Worth 1963, writ ref'd); *Hein v. Harris Co.,* 557 S.W.2d 366, 368 (Tex. Civ. App. – Houston [1st Dist.] 1977, writ ref'd n.r.e.).
[42] *Southwest Dairy Products Co. v. De Frates,* 132 Tex. 556, 125 S.W.2d 282, 283 (1939).
[43] *See Mitchell v. Ellis,* 374 S.W.2d 333, 336 (Tex. Civ. App. – Fort Worth 1963, writ ref'd); *Hein v. Harris Co.,* 557 S.W.2d 366, 368 (Tex. Civ. App. – Houston [1st Dist.] 1977, writ ref'd n.r.e.).
[44] `See Plaintiff's (sic) Original Complaint, p. 3.`
[45] `See id.; Pollard Affidavit, App. 005.`
[46] `Id.`

Further, Jones is not a civil agent or employee of the National Church. The National Church is a Tennessee nonprofit corporation, and Jones is not an officer or director, or its employee.[47] Rather, he is presumably a civil employee or agent for his own Jurisdiction's business entity – a business entity that Ms. Pollard and J.S. chose not to sue.

Although Plaintiff's (sic) Original Complaint and Ms. Pollard's affidavit do not identify any physical abuse inflicted upon J.S., they reference sexual abuse. But, the National Church – even assuming this was true – would not be vicariously liable for this abuse. "In Texas it is not within the scope of a servant's authority to commit an assault on a third person."[48] Here, Plaintiff's (sic) Original Complaint complains of "sexual abuse" and "sexual molestation" among other intentional behavior.[49] The National Church is not vicariously liable for these intentional torts.[50]

   **C. J.S.'s negligent supervision claim fails because the National Church had no knowledge of his comments to J.S. until after they occurred, and it had no reason to foresee that Jones would make them.**

---

[47] *See* Henderson Affidavit, App. 056.
[48] *Geiger v. Varo, Inc.,* 1994 Tex. App. LEXIS 3937, *14 (Tex. App. – Dallas 1994, writ denied)(citing *Green v. Jackson,* 674 S.W.2d 395, 398 (Tex. App. – Amarillo 1984, writ ref'd n.r.e.)).
[49] Plaintiff's (sic) Original Complaint, p. 4.
[50] *See Viking v. Circle K Convenience Stores, Inc.,* 742 S.W.2d 732, 734 (Tex. App. – Houston [1st Dist.] 1987, writ denied).

Plaintiff's (sic) Original Complaint alleges a single theory of direct liability against the National Church – negligent supervision.[51] Specifically, it asserts that the National Church "knew or should have known of the illicit conduct that [] Jones was engaging in with Plaintiff Pollard because a basic investigation would have revealed these facts."[52] This circular theory (you would have known about us if you had investigated us) does not evidence negligent supervision.

Negligent supervision – by definition – requires some degree of knowledge or ordinary care. Specifically, it requires evidence that the employer "(1) is incompetent or unfit *and* (2) the employer knew or in the exercise of ordinary care should have known of the incompetence or unfitness."[53] Here, Ms. Pollard affirmatively states that she never reported Jones's conduct until February 2016.[54] By then, all of the alleged conduct had ceased.

Further, in the context of determining whether a duty exists, Courts consider foreseeability.[55] There is simply no evidence that the National Church knew or should have known that Jones was even speaking with J.S. on his telephone. Rather, the allegations in the Complaint and Ms. Pollard's affidavit reveal only one

---

[51] See Plaintiff's Original Complaint, ECF 1, p. 3.
[52] *Id.*
[53] *Geiger v. Varo, Inc.,* 1994 Tex. App. LEXIS 3937, *22 (Tex. App. – Dallas, 1994, writ denied)(citing *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex. Civ. App. – Tyler 1979, writ ref'd n.r.e.)).
[54] *See* Ms. Pollard's Answers to Church of God in Christ Inc.'s First Set of Interrogatories, App. 050.
[55] *See Golden Spread Council, Inc. #562 of the BSA v. Akins,* 926 S.W.2d 287, 290 (Tex. 1996).

inappropriate comment that Jones allegedly made to J.S. To the extent that comment could be considered the basis of a negligent supervision claim, the National Church had no notice that Jones would make such a comment.

## III.

## Conclusion

The Church respectfully asks the Court to grant its Motion for Final Summary Judgment on J.S.'s Claims, dismiss J.S.'s claims against the Church, and award any further relief the Church is entitled to.

Respectfully submitted,

By: /s/Justin L. Jeter
Justin L. Jeter
State Bar No. 24012910
JETER MELDER, LLP
1111 S. Akard Street, Suite 100
Dallas, Texas 75215
Tel: 214.699.4758
Fax: 214.593.3663
Email: justin@jetermelder.com

**ATTORNEY FOR THE NATIONAL CHURCH**

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been filed with the Clerk of Court on August 18, 2017, using the CM/ECF system and was served on the following:

Jerry G. Matthews  
300 West Bedford Street  
Dimmitt, TX 79027

Ron McLaurin  
1401 Crickets Avenue  
Lubbock, TX 79401

Ronald Spriggs  
Levi Spriggs  
1011 S. Jackson  
Amarillo, TX 79101

By: /s/Justin L. Jeter  
Justin L. Jeter